May it please the court, Diane Hare on behalf of Mr. Leopoldo Zaragoza. This matter is subject to appeal as a result of a revocation proceeding that relied on some limited evidence. And pointing you to my second argument, I would argue that when you look at what the judge, and obviously the government, made no appeal of the exclusion of the evidence by the district court and argued that in fact after they failed to provide any good cause for why witnesses were not called to testify that the district court properly excluded some evidence. It's our position that when you look at the actual evidence that's admissible in this case, taking into mind Mr. Zaragoza's substantive, his due process right to confront witnesses, when you look at the actual evidence that you have, you've got a broken door, you've got a man with a pink face, and you've got conflicting statements. You have Preciado's testimony. You have Preciado's testimony who interestingly The 9-1-1 call, right. The 9-1-1 call that the district court acknowledged was virtually illegible, hard to understand. Because the person who's calling, you don't know who that was. But that didn't keep the court from admitting it, right? That's right, and we objected to its admission because we argued that when the government utterly failed to produce Ms. Contreras, who allegedly made that call, that in fact you shouldn't be looking at some of the exceptions to the hearsay rule to decide whether or not this information is reliable. That, you know, it's our argument. There was some corroborating information. I mean, in response to the 9-1-1 call, the officers are dispatched. They go to the location. They find the person who purported to be the one who made the call. They find the broken door. They find the guy with the, I mean, with the face, the reddened face. So the circumstances that are depicted or described in the 9-1-1 call match the officers' observation when they arrive. So that's some corroboration for the reliability of the call, isn't it? Some of them, yes, certainly many of them. But I think that they never said, and the officers testified, that when they were first called out, no one ever talked about someone breaking in. What Mr. Zaragoza was charged to have been done, and in state court they dismissed that charge, of first-degree burglary. What the petition alleged was that he committed first-degree burglary by breaking in that door. There was zero testimony that it was Mr. Zaragoza who broke that door. For the supervisory lease violation, you don't have to prove he was convicted of that, just that he committed it. That's absolutely right. And unlike the preponderance is standard, isn't it? The preponderance is the standard in a revocation proceeding. But this case is distinguishable from one that Your Honor authored in Hurtado. I'm blanking on Hurtado. I'm probably massacring that name. And there's a good distinction between the case that you have and that case. There the defendant was arguing you can't find a revocation because you haven't proven in the record that there was a conviction. That's not our point. Our point here is there was insufficient evidence that Mr. Zaragoza was linked to the crime that was alleged, first-degree burglary. And there are state cases that talk about when. We did a review on that. We were reviewing the district court's resolution of that issue. What's our standard of review? I think there are two different standards of reviews applicable. One, when you're dealing with the due process issue that's de novo review, and the other. The issue of whether or not Mr. Zaragoza was sufficiently linked to the crime. What's our standard of review on that? I think your standard of review is lower than de novo. And I think that. Right. It's clear error, right? I'm not certain on that, Your Honor. I thought. Essentially, there's been a factual finding there. There was a. The judge believed that he was the one that was there based on all the circumstantial evidence. It's kind of the. You don't see a person take the. You know, they didn't actually see him take the cookies. But you find the lid off. You find the broken crumbs. And, you know, it's sort of the circumstantial evidence. And the court found it to be sufficient. I think that's true. And it's our position that it simply wasn't sufficient. And that the reason for that, that there are plenty of other cases where this court has reversed, even after a trial and conviction in Neville where the proof was obviously beyond a reasonable doubt. But still, you've got a man with a gun. And he went en banc. Yeah. So you can't cite that. Well, there are certainly a number of other decisions that address the issue of sufficiency of the evidence and discuss whether when you're relying on hearsay evidence and some physical corroboration, there are some state cases in the revocation context that deal with whether when you see a pink mark on a woman's cheek and she's crying hysterically to the police officer, that that's just not enough because the police officer can't come into court and testify about what they said happened and have the finder of fact decide, yes, there was an assault. Well, I think we've marshaled your, I think we've established what was the admissible evidence, I think. You know, I want to talk to you about your due process argument because I'm having a little bit of a difficulty getting my arms around that from the standpoint. Are you arguing that the district court erred in conducting a balancing test or that Mr. Zaragoza was prejudiced by the timing of the balancing test? Or are you making both of those arguments? And, obviously, this is with the backdrop of it's a revocation of supervised release. It has to be a bench trial, essentially. So, you know, what exactly are you arguing there? Because the court, it was a little ambiguous in your, you know, if you go through all the record, you learn that the court eventually keeps it all out under Comito. So whether the court heard it earlier, the court had heard it later, and the court said, I'm not relying on that and I'm not considering it as the body of argument. You know, how do you articulate that? That as the Third Circuit determined in the United States versus Lloyd, when the government makes no showing whatsoever that there's good cause to be considering this evidence, that ought to happen first. So it is a timing argument that ultimately what the judge decided was, all right, I'm going to apply Comito, and because there's no showing at all that there's good cause, then I'm going to exclude the evidence. But I'm still going to find it. Does it make you disbelieve the judge that the judge didn't consider it now? I mean, this happens, I mean, you know, as an experienced practitioner, in bench trials, judges all the time, hear something, make evidentiary rulings, either say it comes in or it comes out, and if they say that it leaves it out and I'm not considering it, yeah, they've heard it. It's not like a jury where you do it outside the, but, you know, we generally accept that the judge says, I'm not considering that. I'm not influenced by that. Well, I think that it's hard to unring the bell, and I do think there was. . . What cases do you have to support that? Because you always, it would always be hard to unring a bell in a bench trial if a judge keeps evidence out, and I don't know of any authority that says you have to send it to another judge to make sure that judge doesn't know about it. I'm not aware of an authority that says send it to another judge. What I'm arguing is that Mr. Zaragoza's due process right was tainted, that the hearing was tainted, he didn't receive due process because ultimately, and even though we were begging for that analysis at the beginning and asking the court, please have the government make a proffer, tell you what's their good cause, they didn't do that. And, in fact, they misled the court slightly by suggesting that his interpretation of what their good cause was was accurate. So I think that we're saying. . . It's a violation that the judge was somehow prejudiced, and even though the judge said he didn't consider the evidence that you're saying, we're supposed to assume the judge was? I'm saying that if you exclude all of the evidence that the judge properly excluded under the Comiteau test, then ultimately you're left with insufficient evidence to find that Mr. Zaragoza committed a crime. But insufficiency of the evidence and due process are two different arguments, and you're conflating them, and so I'm trying to separate them. That's right. And Judge Shea often comments on merging arguments as well, but my position is that on the issue of due process, ultimately the court reached the right ruling, but that was late in the game, and that if you're going to make any determination or decision on due process in this context, I don't think that's necessary because I think the law is clear, and ultimately the court did apply the rule correctly in its written ruling subsequent to the determination of the revocation. But I think that U.S. v. Lloyd and other cases dealing with due process and dealing with the defendant's right to confront witnesses do argue that, in fact, if you're deprived of that opportunity to confront the witnesses, then you shouldn't find a revocation. You shouldn't simply rely upon hearsay, even if there's potentially some other avenue for introduction of that hearsay, such as excited utterance. So on a due process basis, I submit that ultimately the court reached the right ruling, but that taking out all the inadmissible evidence, the remainder was insufficient. Thank you. All right. Thank you, counsel. Your Honors, may it please the Court, my name is Timothy Nault, and I am representing the United States in this matter. The district court should be affirmed because it did not consider any hearsay in deciding to revoke the defendant's supervised release, and because the evidence was more than sufficient to support a finding by ponderance of the evidence that the defendant had violated a condition of his release. Isn't the 9-1-1 tape hearsay, but it's just an exception to the hearsay rule? Your Honor, the United States' contention is that it's not hearsay at all because it was not offered to prove the truth of any matter asserted. It wasn't used by the court to say the caller said the defendant was there, so I'm going to revoke his release for that reason. It was only used by the court to corroborate the excited nature of the witnesses at the scene, also to explain the state of mind of the officers as they responded to the emergency call, and also it serves as a piece of evidence. But the district court admitted it as an exception. It didn't say it wasn't hearsay. It said it was admitted under the excited utterance exception. Yeah, the district court did. They sort of did both in his analysis. He first said it's not hearsay, it's not testimonial, and it's an excited utterance. So I think the point there would be that even if a court were considering it as substantive evidence, that it would fit this excited utterance exception, a classic hearsay exception, so it would have quite a good deal of reliability attached to it. And the importance of the fact that it's not testimonial is that if this were a trial proceeding, which it's not, but, you know, if that testimonial hearsay ban applied, it would still be admissible even at trial because it's not testimonial and it fits a sufficient addition of reliability. Well, let's talk about the body of evidence that the court did consider in coming to its conclusion that the appellant-slash-defendant had violated a supervised release. Is Ms. Preciado's testimony critical to the district court's determination that Mr. Zaragoza had violated the conditions of a supervised release? And also, if so, why is her testimony sufficiently reliable to sustain that determination? Ms. Preciado's testimony was important because she put the defendant at the scene. Her testimony is reliable because she took the stand and testified under oath. The defendant talks about how- Well, everyone comes in and testifies under oath. That doesn't per se make them reliable, I don't think. Right. Well, the defendant has discussed how the court has recognized that sometimes statements of, you know, former girlfriends or former boyfriends can be unreliable because they'll have, you know, some sort of an adversarial relationship and might kind of color what they're saying. But in those cases, these were out-of-court hearsay statements that were relayed through police officers, and that was really the point of Camino, was that these officers testifying as to this kind of unreliable hearsay couldn't form a basis. But here we have Ms. Preciado in court. So what exactly did she testify to? What was her testimony? Her testimony- At the hearing. Was that she had been out drinking with a couple friends of hers. They went back to her apartment. She was in the bedroom with Mr. Chavez, and Ms. Contreras was out in the living room on the couch, and Ms. Preciado heard a loud bang coming from the living room. And Mr. Chavez apparently went out to investigate, and when he didn't immediately come back, Ms. Preciado left the room, and at that point she saw the defendant in her living room, the defendant having not previously been in the residence, and Mr. Chavez was on the ground in front of the defendant with a pink mark on his eye, and the door had apparently been broken in, and as she testified, it was not open prior to that. So she puts the defendant at the scene, even though she doesn't see the actual entry, or she hears a noise. She puts the defendant at the scene and hears a noise. You're right, Your Honor, and the important thing is that this is all corroborated by other evidence, that there are photographs of depicting the door having been broken in with debris littered across the floor, photographs of Mr. Chavez's pink face with a bloody shirt. We have a testimony of Officers Wentz and Bowersox as to the state of Mr. Chavez at the time they arrived at the scene and also the condition of the door, and there's also the 911 tape. So Ms. Preciado's testimony was important, but it was also certainly corroborated by a great deal of other evidence. So are we essentially in agreement as to what the body of evidence that was considered is? It's just that appellant says it was insufficient as a matter of law, and you're saying it was sufficient? Yes, Your Honor. First, the important thing that really needs to be stated here is that the court did not consider any hearsay evidence as the appellant is contending. Now, as to the evidence that it did consider. Well, if the 911 tape is hearsay evidence, it did. If it were hearsay, then in that case it would be reliable hearsay because it was an excited utterance. Right, because the district court itself said it was hearsay, but it was just an exception. So that is hearsay evidence, at least in the court's view, that it considered. Yes, Your Honor. The court was a little unclear because it did also say that it was not hearsay. I think it was sort of an alternative that it's not hearsay, but even if it were hearsay, it would be an excited utterance. And as to the rest of the evidence, the standard here is abuse of discretion, and, of course, the district court only needed to find by a preponderance of the evidence that Mr. Zaragoza had committed. So what's this about? If you knew that the witnesses weren't unavailable and you could never satisfy Comito, what was the point of going, as the appellants indicated, what was the point of putting all that before the court, you know, slamming everything against the wall, knowing that you couldn't, you know, a crucial part of that being admissible was that they were unavailable and you would have to make a showing, knowing that you couldn't do it. What was the point of that? Well, Your Honor, first of all. Other than to prejudice the proceedings and deny, I'll make the appellant's argument, and deny him due process. First, Your Honor, the Comito balancing test, the need to show good cause depends on the reliability of the statements and the degree to which they're corroborated by the other evidence. So before the court has a chance to hear the statements and to hear the rest of the evidence involved in the case, we can't really know exactly what requiring good cause is shown. In this case, the probation officer had information from the Yakima County prosecutor that the witnesses refused to testify in the charges that Yakima County brought, and he was operating under that basis when he tried to get a hold of the witnesses and left cards and they did not get back to him. And so... Well, no. Wait, wait, wait. So you're saying you can't know what the evidence is that you're going to put on, that you have to put it on, and just try it out? No, Your Honor, I... You know, I mean, we hold... I mean, lawyers are supposed to know something about what they're going to put on. You don't just call people at random out of the audience and put them on. Yeah, Your Honor. It's that it's a balancing test, and the judge has to be the one that makes the determination as to the degree of good cause that is required. So... And the judge can't make that determination. So there's no harm in trying? Is that the... You weren't sure whether you were going to win or... You're not sure whether you're going to win or lose, so just go ahead and try, and if it sticks, it sticks. If it doesn't, then oh, well. No, Your Honor, I don't think that's the case. I think it's that the government, you know, prior to the hearing, they brought to the attention of the court what they intended to use, these hearsay statements. At that time, they did not believe they had Ms. Preciado present to testify, so there was no question then that the bar to show good cause would probably be pretty high. But once they got Ms. Preciado there, placing the defendant on the scene, which was really the critical part of evidence that's missing from the rest of the direct testimony and the photographs, the good cause that the government would have to show was necessarily quite a bit lower than what they had first thought that they would have to do. All right. I understand. Thank you. If you have no more questions, I'll conclude my presentation. All right. Thank you, counsel. I think you have about a minute for rebuttal. Thank you, Your Honor. You asked a question regarding the importance of Ms. Preciado's testimony. It's important to note that the government itself attempted to impeach the credibility of their own witness repeatedly throughout the process, starting with ER 49. The question regarding, I think the words that didn't come out of my mouth yet are mere presence. The fact that you're there and that maybe a crime occurred gets at what Ms. Preciado didn't say. She didn't say that she saw him hit someone. She didn't say who started the fight. She didn't say that he wasn't there without her permission. In fact, the testimony was they had an on-again, off-again relationship, and they got back and forth together. So we don't know, based on the record in front of us, what Mr. Zaragoza's intentions were when he went to his girlfriend's apartment. We know he called his probation officer like he was supposed to three days before and said this is just temporary, we're going to get back together, but this is just a cooling-off period. Yeah, to break down the door, that tells you something. That's not the welcome mat. You have damage to the door, it's absolutely true, but you don't know how that damage occurred. All right. Thank you, counsel. Thank you to both counsels. The case just argued and submitted for decision by the court.
judges: Cudahy, Rawlinson, Callahan